### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SERTA SIMMONS BEDDING, LLC., *et al.*, | § | Case No. 23-90020 (CML) |
| | § | |
| Debtors. | § | |
| | § | |
| ---------------------------------------------------- | § | |
| SERTA SIMMONS BEDDING, LLC, *et al.*, | § | |
| | § | Adv. Pro. No. 23-09001 (CML) |
| | § | |
| Plaintiffs and Counterclaim Defendant, | § | |
| | § | |
| v. | § | |
| | § | |
| AG CENTRE STREET PARTNERSHIP L.P., *et al.*, | § | |
| | § | |
| Defendants, Counterclaim Plaintiffs and Third-Party Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| AGF FLOATING RATE INCOME FUND, *et al.*, | § | |
| | § | |
| Third-Party Defendants. | § | |
| ---------------------------------------------------- | § | |

## SERTA SIMMONS BEDDING, LLC'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

## <u>TABLE OF CONTENTS</u>

**Page**

I. PRELIMINARY STATEMENT ................................................................ 1

II. PROCEDURAL HISTORY .................................................................... 3

    A. Company Files the Underlying Adversary Proceeding In Conjunction with Commencement of the Chapter 11 Cases ................................................ 3

    B. Court Finds In Favor of the Company and PTL Lenders on the Open Market Purchase Issue at Summary Judgment ........................................ 5

    C. Court Holds a Trial, Finds for the Company and PTL Lenders, and Confirms the Plan ......................................................................... 6

    D. Court Enters the Confirmation Order and Final Judgment .................... 6

    E. Non-PTL Lenders, LCM Parties, and Citadel Appeal ......................... 7

    F. Fifth Circuit Confirms the Plan, Excises the Indemnity, and Reverses Several Holdings ........................................................................... 7

III. STATEMENT OF UNCONTROVERTED FACTS ...................................... 9

    A. 2020 Transaction And Related Adversary Proceeding Counterclaims ..... 9

    B. The Plan Discharges Any Claims Under the Non-PTL Credit Agreement ........... 9

    C. Debtors Take All Necessary Steps to Consummate the Plan ............... 12

IV. LEGAL STANDARD ......................................................................... 12

V. ARGUMENT .................................................................................. 13

    A. Counterclaims in the Adversary Proceeding Against the Company Have Been Discharged Pursuant to Plan Confirmation ............................... 13

VI. CONCLUSION ................................................................................ 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Am. Rice, Inc.*
   2010 WL 8752393 (Bankr. S.D. Tex. Apr. 27, 2010) ...............................................................3

*Anderson v. Liberty Lobby,*
   477 U.S. 242 (1986)..............................................................................................................11, 12

*Banque de Paris et des Pays-Bas (Suisse) S.A. v. Arhens (In re Arhens),*
   120 B.R. 852 (Bankr. S.D. Tex. 1990) ......................................................................................3

*Blake v. Edge Petroleum Corp. (In re Edge Petroleum Corp.),*
   2010 WL 3619937 (Bankr. S.D. Tex. Sept. 10, 2010) ...............................3, 15, 16, 17, 18, 19

*Brown v. Lloyd's of London (In re Brown),*
   219 B.R. 725 (Bankr. S.D. Tex. 1997) ......................................................................................3

*Hamilton v. AVMP Corp.,*
   593 Fed. App'x 314 (5th Cir. 2014) ....................................................................................12, 13

*MacMillan Bloedel Ltd. v. Flintkote Co.,*
   760 F.2d 580 (5th Cir. 1985) .....................................................................................................3

*Manix Energy Ltd. v. James (In re James),*
   300 B.R. 890 (Bankr. W.D. Tex. 2003) ..................................................................................3, 4

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986).................................................................................................................12

*In re Missionary Baptist Found. Of Am.,*
   712 F.2d 206 (5th Cir. 1983).....................................................................................................4

*In re Serta Simmons Bedding, LLC,*
   125 F.4th 555 (5th Cir. 2024) ......................................................................3, 6, 7, 8, 14, 15

*State of Florida Bd. of Trs. of Internal Improvement Tr. Fund v. Charley Toppino
   & Sons, Inc.*
   514 F.2d 700 (5th Cir. 1975)......................................................................................................4

**Statutes**

11 U.S.C. § 1101(2) ............................................................................................................12

28 U.S.C. § 157(b) ..............................................................................................................23

28 U.S.C. §158(d)(2) ............................................................................................6

28 U.S.C. § 1334 ...............................................................................................23

28 U.S.C. § 1408 ...............................................................................................23

28 U.S.C. § 1409 ...............................................................................................23

**Other Authorities**

FED. R. BANKR. P. 7056............................................................................................12

FED. R. CIV. P. 56(a)............................................................................................12

FED. R. CIV. P. 56(e)............................................................................................12

Serta Simmons Bedding, LLC (the "**Company**"), as reorganized debtor in the above-captioned chapter 11 case,[1] respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment (the "**Motion**") pursuant to Federal Rule of Civil Procedure 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, dismissing all remaining Counterclaims against the Company in this Adversary Proceeding because any such Counterclaims have been discharged by the confirmed Plan.[2]

## I.   PRELIMINARY STATEMENT

The remaining Counterclaims against the Company are premised on a transaction that the Company entered into five years ago (the "**2020 Transaction**") with a majority of its lenders (the "**PTL Lenders**")[3] to reduce its debt and provide much-needed liquidity.  Following the 2020 Transaction, two groups of loan holders under the Non-PTL Term Loan Agreement (the "**Non-PTL Lenders**" and the "**LCM Parties**") filed lawsuits in both state and federal court challenging the 2020 Transaction, claiming that the 2020 Transaction, which resulted in a credit agreement that created a new super-priority tranche of debt (the "**PTL Credit Agreement**") breached the terms of the parties' existing credit agreement (the "**Non-PTL Term Loan Agreement**").

While those litigations were pending, the Company faced additional financial difficulties

---

[1] Capitalized terms not otherwise defined herein have the meaning given to them, as applicable, in the Plan (as defined herein), PTL Credit Agreement (as defined in the Plan), the Complaint filed at ECF No. 1, Case No. 23-09001 (Bankr. S.D. Tex.) (the "**Adversary Proceeding**"), or as the context otherwise requires.

[2] *Second Amended Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors* (Case No. 23-90020, ECF No. 977) (the "**Plan**").

[3] In the Plan, PTL Lenders refers to all parties to the PTL Credit Agreement.  In this Motion, depending on the context, PTL Lenders refers either to all parties to the PTL Credit Agreement or those PTL Lenders who are parties to this Adversary Proceeding.

and ultimately commenced chapter 11 proceedings in this Court in January of 2023.  At the same time, the Company and the PTL Lenders filed the instant Adversary Proceeding to settle, once and for all, the various lawsuits over the 2020 Transaction.  In response, both the Non-PTL Lenders and LCM Parties filed counterclaims against the Company and the PTL Lenders (the "**Counterclaims**").[4]

Negotiations over the Plan in the chapter 11 proceedings included discussions about the treatment of the Claims and Causes of Action at issue in the Adversary Proceeding.  To make sure the Company had a fresh start upon its emergence from chapter 11, the Plan included explicit provisions discharging and releasing any Claims (including the Counterclaims against the Company at issue here) stemming from the PTL Credit Agreement and Non-PTL Term Loan Agreement—the exact issues being litigated in the Adversary Proceeding—upon Plan effectiveness.

Following a fully briefed summary judgment motion, summary judgment hearing, a four-day evidentiary trial, and an additional day for closing arguments, this Court found in favor of the Company and the PTL Lenders on all claims and Counterclaims in the Adversary Proceeding, and confirmed the Plan.  Following this Court's Confirmation Order, the Plan went effective, thereby

---

[4] The LCM Parties subsequently amended their Counterclaims just days ago.  *See* ECF No. 374. For the avoidance of doubt, use of the term Counterclaims throughout the Motion includes the LCM Parties' Counterclaims filed at ECF No. 374, as well as all other amendments to the Non-PTL Lenders' and LCM Parties' Counterclaims made throughout the Adversary Proceeding.  In the newly amended Counterclaim, the LCM Parties dropped their implied covenant of good faith and fair dealing cause of action, and limited their breach of contract action, which in sum and substance is identical to its previous breach of contract action, *compare* ECF No. 148 ¶¶ 157-63 *with* ECF No. 374 ¶¶ 47-52, to just a claim against the Company and specifically enumerated third party defendants.  To avoid any confusion, the Motion explains why *all* LCM Parties' Counterclaims should be dismissed.

discharging any Claims and Causes of Action stemming from the PTL Credit Agreement and Non-PTL Term Loan Agreement, and with it, the Counterclaims against the Company in the Adversary Proceeding.

On appeal, the Fifth Circuit did nothing to disrupt this outcome.  Other than excising the indemnity the Company granted to the PTL Lenders from the Plan, the Fifth Circuit specifically held that the excision would not "unwind[] the entire Plan and trigger[] a whole new confirmation proceeding."  *In re Serta Simmons Bedding, LLC*, 125 F.4th 555, 587 (5th Cir. 2024).  Thus, the Plan remains in full force and effect, except for the excised indemnity.

With the Plan in place, all the Counterclaims asserted by the Non-PTL Lenders and LCM Parties against the Company have been discharged and extinguished.  As a result, this Court should dismiss the pending Counterclaims against the Company and allow the Company to focus its efforts on its business rather than protracted litigation.

## II.   **PROCEDURAL HISTORY**

### A. **Company Files the Underlying Adversary Proceeding in Conjunction with Commencement of the Chapter 11 Cases**

On January 23, 2023 (the "**Petition Date**"), the Company and its debtor affiliates (the "**Debtors**"), leading manufacturers and distributors of mattresses in North America that own and manage some of the best-selling bedding brands in the mattress industry, ECF No. 324 at 2,[5] filed

---

[5] Unless otherwise noted, references to docket entries refer to filings in the Adversary Proceeding. The Court may take judicial notice of its own records.  *See Banque de Paris et des Pays-Bas (Suisse) S.A. v. Arhens (In re Arhens)*, 120 B.R. 852, 854 (Bankr. S.D. Tex. 1990).  As such, this Court may take judicial notice of the docket in both "this adversary proceeding and in the main bankruptcy case."  *Brown v. Lloyd's of London (In re Brown)*, 219 B.R. 725, 729 (Bankr. S.D. Tex. 1997).  This "practice is particularly useful in bankruptcy litigation in which individual adversary proceedings and contested matters, each of which is procedurally distinct and has its own record, all occur within, and are affected by, the context of the parent bankruptcy case."  *Manix Energy Ltd. v. James (In re James)*, 300 B.R. 890, 894 (Bankr. W.D. Tex. 2003) (citing

voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[6]   From and after the Petition Date, the Debtors operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The following day, the Company, together with the PTL Lenders, filed this Adversary Proceeding to comprehensively resolve disputes arising from the 2020 Transaction and any future litigation related to the 2020 Transaction.  *See* ECF No. 1.[7]  The Company did so, in part, because resolution of ongoing litigation concerning the 2020 Transaction would determine the priority status of a number of its lenders.  *See id.* ¶ 7.

The Non-PTL Lenders and the LCM Parties each filed Counterclaims against both the PTL Lenders and the Company for, among other things, the alleged breach of the Non-PTL Term Loan

---

*MacMillan Bloedel Ltd. v. Flintkote Co*., 760 F.2d 580, 587 (5th Cir. 1985); *In re Missionary Baptist Found. of Am.*, 712 F.2d 206, 211 (5th Cir. 1983); *State of Florida Bd. of Trs. of Internal Improvement Tr. Fund v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975)).

[6] The Debtors' chapter 11 cases were jointly administered under the lead case with case number 23-90020.  On September 7, 2023, the Court entered the *Final Decree and Order Closing Certain Cases* (Case No. 23-90020, ECF No. 1262) (the "**Final Decree**"), closing each of the Debtors' chapter 11 cases except the case of Dreamwell, Ltd. (Case No. 23-90024).  Pursuant to the Final Decree and Confirmation Order, all matters relating to any of the Debtors are administered and heard in the chapter 11 case of Dreamwell, Ltd.  The Court may take judicial notice of these and all other docket entries in the main bankruptcy case.  *See supra* n.5.

[7] The Company subsequently amended its Complaint. *See* ECF No. 38.  This amendment added parties to the proceeding, but did not change the substance of the Complaint.

Agreement and the alleged breach of the implied covenant of good faith and fair dealing.  *See* ECF No. 146 ¶¶ 157-71; ECF No. 148 ¶¶ 300-46;[8] ECF No. 374 ¶¶ 47-52.[9]

On February 24, 2023, the Company and PTL Lenders moved for summary judgment in the instant Adversary Proceeding, seeking declarations that (1) the 2020 Transaction was a permitted open market purchase under Section 9.05(g) of the Non-PTL Term Loan Agreement and (2) the Company and PTL Lenders did not breach the implied covenant of good faith and fair dealing. *See* ECF No. 69 at 29; *see also* ECF No. 73.

### B. Court Finds in Favor of the Company and PTL Lenders on the Open Market Purchase Issue at Summary Judgment

On April 6, 2023, the Court entered a written order partially granting the motions for summary judgment, finding that the Company and PTL Lenders complied with the open market purchase provision of the Non-PTL Term Loan Agreement.  *See* ECF No. 141 at 3.  However, the Court denied the motions for summary judgment as to the issue of whether Plaintiffs breached the implied covenant of good faith and fair dealing. *See id.* at 3-4; *see also* ECF No. 133 at 136:5-7.

---

[8] The Non-PTL Lenders first filed a corrected answer and counterclaims at ECF No. 68, and then amended their answer and counterclaims at ECF No. 148.  For the avoidance of doubt, use of the term Counterclaims includes any and all Counterclaims against the Company in this Adversary Proceeding, as amended where applicable.  *See* ECF No. 68 ¶¶ 299-325; ECF No. 146 ¶¶ 157-71; ECF No. 148 ¶¶ 300-46; ECF No. 374 ¶¶ 47-52.

[9] The Non-PTL Lenders also filed a counterclaim seeking a declaration that Non-PTL Lender Apollo was not a "Disqualified Institution" under the terms of the Non-PTL Term Loan Agreement.  *See* ECF No. 148 ¶¶ 347-51.  Prior to the conclusion of trial, the Company and the Non-PTL Lenders settled the declaratory judgment action related to Apollo being a Disqualified Institution.  *See Stipulation and Agreed Order Related to North Star's Status as a Disqualified Institution*, (Case No. 23-90020, ECF No. 945).  As such, the remainder of the Motion will omit discussion of that claim.

On April 7, 2023, the Non-PTL Lenders and the LCM Parties each noticed interlocutory appeals of the Court's order granting partial summary judgment finding that the 2020 Transaction constituted an open market purchase.  *See* ECF Nos. 144-45.  This Court certified its decision for direct appeal to the Fifth Circuit, pursuant to 28 U.S.C. § 158(d)(2).  *See In re Serta Simmons Bedding, LLC*, 125 F.4th at 570.

### C.  Court Holds a Trial, Finds for the Company and PTL Lenders, and Confirms the Plan

Between May 15, 2023 and May 18, 2023, the Court held a combined four-day bench trial to consider (i) confirmation of the Plan and (ii) resolution of the remaining disputes in the Adversary Proceeding.  *See* ECF No. 324 at 9.  Following the conclusion of the bench trial and closing arguments, on June 6, 2023, the Court issued an opinion concluding that the Company and PTL Lenders did not breach the implied covenant of good faith and fair dealing in entering into the 2020 Transaction.  *Id.* at 17.

In the same opinion, the Court confirmed the Plan over the objections of several creditors, including the objections of the Non-PTL Lenders and of Citadel Equity Fund Ltd. ("**Citadel**") to the Plan's inclusion of the Company's indemnification of the PTL Lenders for liability related to the 2020 Transaction.  *See id.* at 10-15.  The Court overruled both objections and confirmed the Plan.

### D.  Court Enters the Confirmation Order and Final Judgment

On June 14, 2023, the Court issued a Judgment in the Adversary Proceeding in which it declared that the Company and the PTL Lenders did not breach the implied covenant of good faith and fair dealing by entering into the 2020 Transaction and that the 2020 Transaction was permitted under the Non-PTL Term Loan Agreement.  *See* ECF No. 328 (the "**Judgment**") at 2-3.  The Court also denied the Counterclaims brought by the Non-PTL Lenders and the LCM Parties seeking

damages for breach of the Non-PTL Term Loan Agreement and breach of the implied covenant of good faith and fair dealing, and denied the Non-PTL Lenders' Counterclaim seeking a declaratory judgment that the 2020 Transaction breached the Non-PTL Term Loan Agreement.  *See id.* at 2.

That same day, the Court separately issued a Confirmation Order in the main bankruptcy case confirming the Plan.  *See Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and its Affiliated Debtors* (Case No. 23-90020, ECF No. 1071) (the "**Confirmation Order**").

### E.  Non-PTL Lenders, LCM Parties, and Citadel Appeal

Following entry of the Confirmation Order and Judgment in the Adversary Proceeding, the Non-PTL Lenders, LCM Parties, and Citadel appealed several of the Court's holdings to the Fifth Circuit, including: (i) the Court's Judgment denying the Non-PTL Lenders' and LCM Parties' Counterclaims for breach of the Non-PTL Term Loan Agreement; (ii) the Court's confirmation of the Plan over the objection of the Non-PTL Lenders; and (iii) the Court's confirmation of the Plan over Citadel's objection.  *See In re Serta Simmons Bedding, LLC*, 125 F.4th at 571-72.  The Fifth Circuit then consolidated these appeals along with the Non-PTL Lenders' and the LCM Parties' interlocutory appeals of the Court's partial summary judgment order for consideration in a single proceeding.  *See id*.

### F.  Fifth Circuit Confirms the Plan, Excises the Indemnity, and Reverses Several Holdings

On December 31, 2024, the Fifth Circuit issued an opinion resolving the four consolidated appeals.  *See id.* at 593.  The Fifth Circuit concluded that the 2020 Transaction did not constitute an open market purchase within the meaning of Section 9.05(g) of the Non-PTL Term Loan Agreement.  *See id.* at 579, 584.  As a result, the Fifth Circuit reversed both the portion of this Court's partial summary judgment opinion that found the 2020 Transaction constituted an open

7

market purchase and vacated the Court's post-trial Judgment denying the Non-PTL Lenders' Counterclaims for breach of the Non-PTL Term Loan Agreement.  *See id.* at 584.  The Fifth Circuit held that, because the Court's post-trial denial of the Non-PTL Lenders' Counterclaims was "largely based on its analysis of the open market purchase issue," there had been little "substantive discussion of the breach of contract issue" in the record or briefing on appeal.  *Id.*  Accordingly, the Fifth Circuit vacated the Court's Judgment denying the Non-PTL Lenders' Counterclaims and remanded those claims for reconsideration by this Court.  *See id.*  The Fifth Circuit also dismissed one of the LCM Parties' appeals because they had "explicitly abandoned their denied clams for breach of contract and breach of the implied covenant of good faith and fair dealing."  *Id.* at 576.

The Fifth Circuit also reversed the Court's confirmation of the Plan but only insofar as it had approved the Plan's indemnity in which the Company agreed to indemnify the PTL Lenders for litigation liability relating to the 2020 Transaction.  *See id.* at 584-85, 593.  The Fifth Circuit found that the indemnity both constituted an impermissible "end-run" around the Bankruptcy Code's disallowance of contingent claims for reimbursement and violated the Code's requirement of equal treatment.  *See id.* at 588-93.

To remedy these violations, the Fifth Circuit excised the indemnity from the Plan, but expressly held that this was a "surgical[]" tool that did "not toll doom for the Plan."  *Id.* at 587. With the stated intention of "fashion[ing] whatever relief is practicable," the Fifth Circuit held that excision of the indemnity did not "unwind[] the entire Plan," "trigger[] a whole new confirmation proceeding," or "require[] a new plan."  *Id.* (internal quotation marks omitted).  The Fifth Circuit otherwise confirmed the Plan.

III.    **STATEMENT OF UNCONTROVERTED FACTS**

**A. 2020 Transaction And Related Adversary Proceeding Counterclaims**

The Non-PTL Lenders filed four Counterclaims against the Company challenging the 2020 Transaction under the terms of the Non-PTL Term Loan Agreement: (1) a declaratory judgment action that the 2020 Transaction violated the express terms of the Non-PTL Term Loan Agreement and the implied covenant of good faith and fair dealing making the 2020 Transaction *void ab initio*, or in the alternative, voidable, ECF No. 148 ¶¶ 300-04; (2) two breach of contract claims for breach of the Non-PTL Term Loan Agreement, *id.* ¶¶ 305-09, 342-46; and (3) breach of the implied covenant of good faith and fair dealing of the Non-PTL Term Loan Agreement, *id.* ¶¶ 310-41. Likewise, the LCM Parties filed two Counterclaims: (1) a breach of contract claim for breach of the Non-PTL Term Loan Agreement, ECF No. 146 ¶¶ 157-63, ECF No. 374 ¶¶ 47-52; and (2) a breach of the implied covenant of good faith and fair dealing of the Non-PTL Term Loan Agreement, *id.* ¶¶ 164-71.[10]

**B. The Plan Discharges Any Claims Under the Non-PTL Credit Agreement**

The Plan defines "Claim" by reference to the definition set forth in Bankruptcy Code section 101(5).  *See* Plan § 1.16.  Section 101(5) of the Bankruptcy Code defines "claim" as follows:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such

---

[10] As discussed above, *supra* n.4, the LCM Parties' most recent amendment dropped Counterclaims for the breach of the implied covenant and good faith dealing.   The amended Counterclaim against the Debtors and PTL Lenders alleges only breach of the Non-PTL Term Loan Agreement.

right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

The Plan defines "Causes of Action" as follows:

[A]ny action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws). Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

*See* Plan § 1.14.

Class 5 (Non-PTL) Claims in the Plan cover all Claims and Causes of Action that were, are currently, or may have been asserted against the Company, the Debtors, or the Reorganized Debtors, related to the Non-PTL Term Loan Agreement, which include the Non-PTL Lenders' and LCM Parties' Counterclaims against the Company in this Adversary Proceeding. The classification and treatment for the Non-PTL Claims under the Plan are as follows:

| Classification | Treatment |
| --- | --- |
| "[A]ny Claim arising from or in connection to principal obligations under the Non-PTL Term Loan Agreement, including all accrued and unpaid interest, fees, and other amounts payable pursuant to, and all claims or Causes of Action arising | "On the Effective Date, all Non-PTL Claims will be cancelled, released, and extinguished and will be of no further force and effect. Each holder of such Allowed Non-PTL Claims will receive, with a carve out from the collateral (or the value of such collateral) securing the FLSO Claims, its Pro Rata Share of 1% of New Common Interests issued on the |

| Classification | Treatment |
|---|---|
| under or in connection with." Plan § 1.110; *see id.* § 4.5(a). | Effective Date, subject to dilution by any New Common Interests distributed pursuant to the Management Incentive Plan." Plan § 4.5(b). |

The Plan also provides that, among other things, "in consideration for the classification, distribution, releases, and other benefits provided under the Plan," the Plan constitutes an "integrated and global good faith compromise and settlement of all Claims, Interests, and other controversies" relating to the rights such creditors may have had with respect to any Allowed Claim or any distribution to be made on account of such Allowed Claim against any of the Debtors. *See* Plan § 5.1(a) ; *see also* Confirmation Order ¶ 30.

Pursuant to Section 1141(d) of the Bankruptcy Code and the Plan, Claims and Causes of Action against the Debtors are completely discharged upon the Debtors' emergence from chapter 11. Specifically, the Plan provides that "the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever." *See* Plan § 10.3; *see also* Confirmation Order ¶ 37.

Under the Plan, this discharge of Claims and Causes of Action against the Company is effective "regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code." *Id.*

The Plan also provides that such discharge is effective regardless of whether the holder of a Claim voted to accept the Plan and that any Confirmation Order of the Plan effectuates the Plan's discharge of Claims against the Company.  *See id.*

### C.  Debtors Take All Necessary Steps to Consummate the Plan

On June 29, 2023, once all conditions precedent to the effectiveness of the Plan were satisfied or waived in accordance with the Plan, including, *inter alia*, necessary steps to provide distributions to the holders of Allowed Non-PTL Claims, the Plan was substantially consummated. *See* Notice of Effective Date (Case No. 23-90020, ECF No. 1150) (the "**Notice of Effective Date**"); *see also* 11 U.S.C. § 1101(2).  Specifically, in accordance with Article 9.1 of the Plan, on June 29, 2023, the New Common Interests were issued by the Reorganized Parent.  *See* Plan § 9.1(e).

## IV.  <u>LEGAL STANDARD</u>

Summary judgment is appropriate where, as here, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056; *see Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986) (stating that "the inquiry [is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  Once the moving party has met this initial burden, either the non-moving party must establish "specific facts showing that there is a genuine issue for trial" such that "the record taken as a whole could lead a rational trier of fact to find for the non-moving party," or summary judgment should be granted.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citing FED. R. CIV. P. 56(e)); *see also Hamilton v. AVMP Corp.*, 593 F. App'x 314, 323 (5th Cir. 2014) (stating that the Plaintiff "fails to point to sufficient summary judgment

evidence to create a genuine issue of material fact," and "[t]hus, [the Defendant] is entitled to summary judgment as a matter of law").

## V.    <u>ARGUMENT</u>

### A. Counterclaims in the Adversary Proceeding Against the Company Have Been Discharged Pursuant to Plan Confirmation

The Plan and Confirmation Order, with the exception of the indemnity, remain in full force and effect following the Fifth Circuit's decision.   Accordingly, the remaining Counterclaims asserted against the Company in the Adversary Proceeding should be dismissed.   *Blake v. Edge Petroleum Corp. (In re Edge Petroleum Corp.)*, No. 10-2007, 2010 WL 3619937, at *4 (Bankr. S.D. Tex. Sept. 10, 2010); *In re Am. Rice, Inc.*, No. 98-21254-c-11, 2010 WL 8752393, at *9-10 (Bankr. S.D. Tex. Apr. 27, 2010).

The Plan expressly provides that the "**distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of *Claims*, Interests, and *Causes of Action* of any nature whatsoever**." Plan § 10.3 (emphasis added).  As defined in the Plan, a Claim in Class 5 (Non-PTL Claims) is one that "ar[ose] from or in connection to principal obligations under the Non-PTL Term Loan Agreement."   *Id.* §§ 1.110, 4.5(a); *see also* ECF No. 146 ¶¶ 157-71; ECF No. 148 ¶¶ 300-46; ECF No. 374 ¶¶ 47-52.   There can be no dispute that the Counterclaims against the Company asserted in the Adversary Proceeding "ar[ose] from or in connection to principal obligations under the Non-PTL Term Loan Agreement" because the Counterclaims are premised on allegations that the 2020 Transaction breached the Non-PTL Term Loan Agreement.  The Non-PTL Lenders admit as much in their pleadings: "[Non-PTL Term Loan Agreement loans] are considered Class 5" Claims under the Plan. ECF No. 148 ¶ 336.   The Non-PTL Lenders' and LCM Parties' Counterclaims against the Company are also Causes of Action under the Plan, since they are

actions "arising before, on, or after . . . the Petition Date, in contract [], in law or in equity or pursuant to any other theory of law." Plan § 1.14.[11]  Here, the Counterclaims for declaratory judgment, breach of contract, and breach of the implied covenant were filed after the Petition Date based on actions arising prior to the Petition Date.  *See* ECF No. 146 ¶¶ 157-71; ECF No. 148 ¶¶ 300-46; ECF No. 374 ¶¶ 47-52.

The Plan "cancelled, released, and extinguished" any Claims in Class 5 (Non-PTL Claims) stemming from the Non-PTL Term Loan Agreement on the Effective Date, while also providing Allowed Non-PTL Claims holders with "its Pro Rata Share of 1% of New Common Interest issued on the Effective Date," with certain carve outs.  *Id.* § 4.5(b).  The Plan also made clear that "distributions, rights, and treatments that are provided in the Plan shall be in complete satisfaction, discharge, and release, as of the Effective Date, of ***Claims*** [], and ***Causes of Action*** of any nature whatsoever."  *Id.* § 10.3 (emphasis added).  And, the Company has made, caused to be made, or otherwise taken steps required under the Plan to effectuate the distributions provided under Section 4.5(b) of the Plan to each of the Non-PTL Lenders and LCM Parties who filed proofs of claim.  *See* Notice of Effective Date; Plan § 9.1.  Thus, as a result of those distributions and the confirmation of the Plan, the Claims of the Non-PTL Lenders and LCM Parties[12] (including the Counterclaims at issue here) were completely satisfied, discharged, and released as of the Effective Date.  *See* Plan §§ 4.5(b), 6.14, 10.3; *see also* Confirmation Order ¶ 37.  Because the Fifth Circuit

---

[11] Causes of Action also specifically include any "counterclaim" or "claim for breach of contract or for breach of duties imposed by law or in equity."  Plan § 1.14.

[12] The Fifth Circuit largely dismissed the LCM Parties' Counterclaims, *In re Serta Simmons Bedding, LLC*, 125 F.4th at 576, but did assert that they could still seek damages based on the open market purchase issue.  *Id.* 576 n.11.  As such, for the avoidance of doubt, the Company includes all LCM Parties' Counterclaims in this Motion.

did not reverse this Court's confirmation of the Plan, it upheld the discharge of all Claims and Causes of Action against the Company in this Adversary Proceeding. *In re Serta Simmons Bedding, LLC*, 125 F.4th at 587.[13]

Indeed, this case is on all fours with *In re Edge*. In *In re Edge*, a claimant had, as the Non-PTL Lenders and LCM Parties did here,[14] initiated an action in state court prior to the debtor filing for chapter 11 protection. *In re Edge*, 2010 WL 3619937, at *1-2. Following commencement of the chapter 11 proceedings, the parties who initiated the state court proceeding filed a proof of claim[15] in the bankruptcy. *Id.* at *2. The plan there had nearly identical language to the instant Plan that discharged the Claims and Causes of Action asserted in the Adversary Proceeding:

|  | **Instant Case** | ***In re Edge Petroleum Corp.*, 2010 WL 3619937 (Bankr. S.D. Tex. Sept. 10, 2010).** |
|---|---|---|
| Claims Discharge Provision | Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Definitive Documents, the Plan or in a contract, instrument, or other agreement or document executed pursuant to the Plan, **the** | Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, **the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge,** |

---

[13] The only Causes of Action involving the Company that could remain in this Adversary Proceeding are those that the Company asserted against the Non-PTL Lenders and the LCM Parties. If the Court grants the instant motion, the Company will voluntarily dismiss its Causes of Action against the Non-PTL Lenders and the LCM Parties in this Adversary Proceeding.

[14] The Non-PTL Lenders had initiated multiple state court actions, *see* ECF No. 1 ¶¶ 60, 66, and the LCM Parties had initiated multiple federal court actions, *see id.* ¶¶ 68-69.

[15] UBS AG, Stamford Branch, which, as administrative agent under the Non-PTL Term Loan Agreement, filed proofs of claim in the Debtors' chapter 11 cases on March 16, 2023, on behalf of the Non-PTL Lenders and the LCM Parties. Those proofs of claim have the claim numbers: 20321, 20322, 20323, 20326, 20327, 20329, 20331, 20333, 20334, 20335, 20336, 20339, 20340, and 20343.

| | **Instant Case** | *In re Edge Petroleum Corp.*, 2010 WL 3619937 (Bankr. S.D. Tex. Sept. 10, 2010). |
|---|---|---|
| | **distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever**, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the holder of such a Claim or Interest has voted to accept the Plan. Any default or "event of default" by the Debtors with respect to any Claim or Interest that existed immediately | **and release, effective as of the Effective Date, of all Claims, Interest, and Causes of Action of any nature whatsoever**, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or Interest based upon such debt, right, claim, or Interest is Filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such Claim, debt, right or Interest is allowed pursuant to |

| | **Instant Case** | *In re Edge Petroleum Corp.*, 2010 WL 3619937 (Bankr. S.D. Tex. Sept. 10, 2010). |
|---|---|---|
| | before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.<br><br>Plan § 10.3 (emphasis added). | section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan.  Subject to the terms of the Plan and the confirmation Order, any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the Filing of the chapter 11 cases shall be deemed satisfied on the Effective Date. Subject to the terms of the Plan, the confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.  Subject to the terms of the Plan, the confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, Reorganized Edge, the Reorganized Subsidiaries and all successors thereto. As provided in section 524 of the Bankruptcy Code, subject to the terms of the Plan, such discharge shall void any judgment against the Debtors, their Estates, Reorganized Edge, the Reorganized Subsidiaries or any successors thereto at any time obtained to the extent it relates to a Claim or Interest discharged, and operates as an injunction against the prosecution of any action against Reorganized Edge, the Reorganized Subsidiaries or their respective property and assets to the extent it relates to a discharged Claim or Interest.<br><br>*Id.* at 2 (emphasis added). |

| | **Instant Case** | *In re Edge Petroleum Corp.*, 2010 WL 3619937 (Bankr. S.D. Tex. Sept. 10, 2010). |
|---|---|---|
| "Causes of Action" defined | "Causes of Action" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws).  Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 | "Causes of Action" means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, forseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in party upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date. *Id.* at 3. |

18

|  | **Instant Case** | ***In re Edge Petroleum Corp.***, 2010 WL 3619937 (Bankr. S.D. Tex. Sept. 10, 2010). |
|---|---|---|
|  | of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.<br><br>Plan § 1.14. |  |
| "Claim" defined | "Claim" has the meaning set forth in **section 101(5) of the Bankruptcy Code**, as against any Debtor.<br><br>Plan § 1.16 (emphasis added). | The Plan of Reorganization defines "claim" by reference to **Bankruptcy Code section 101(5)**.<br><br>*Id.* at 3 (emphasis added). |

The Court in *In re Edge* granted summary judgment in the adversary proceeding brought by the claimants because it found that all "claims or causes of action [] [were] discharged under the [plan and confirmation order]." *In re Edge*, 2010 WL 3619937, at *4.

Here, like in *In re Edge* where the facts are nearly identical, this Court should grant the Company's motion for summary judgment because the Non-PTL Lenders' and LCM Parties' Counterclaims against the Company have been discharged, released, and extinguished by the plain language of the Plan and Confirmation Order.

**VI.**   <u>**CONCLUSION**</u>

Accordingly, the Company respectfully requests that this Court grant its Motion and dismiss all remaining Counterclaims filed by the Non-PTL Lenders and LCM Parties in the Adversary Proceedings against the Company.

Dated:  August 15, 2025
　　　　 Houston, Texas

WEIL, GOTSHAL & MANGES LLP

*/s/ Gabriel A. Morgan*　　　　　　　　　　　

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Stephanie N. Morrison (24126930)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
E-mail:  Gabriel.Morgan@weil.com
　　　　　 Stephanie.Morrison@weil.com

WEIL, GOTSHAL & MANGES LLP
David J. Lender (admitted *pro hac vice*)
Luna N. Barrington (admitted *pro hac vice*)
Joseph R. Rausch (admitted *pro hac vice*)
Nicholas J. Reade (admitted *pro hac vice*)
767 Fifth Avenue
New York, NY 10153
Tel:　　(212) 310-8000
Fax:　　(212) 310-8007
Email: David.Lender@weil.com
　　　　 Luna.Barrington@weil.com
　　　　 Joseph.Rausch@weil.com
　　　　 Nick.Reade@weil.com


*Counsel for Serta Simmons Bedding, LLC*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Gabriel A. Morgan*       
Gabriel A. Morgan
